Clerk of the
Circuit Court

Clerk of the
Circuit Court

IN THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY   2016 SEP 19  PM 4: 02
MARYLAND

2016 SEP 19  PM 4: 02

PR GEO CO MD #05   PR GEO CO MD #05

| | |
|---|---|
| **Jonathan T. Alston**<br>10012 Cedarhollow Ln<br>Largo, MD 20774<br><br>    *Individually and on*<br>    *Behalf of a Class of*<br>    *Persons Similarly Situated*<br><br>    Plaintiffs,<br><br>v.<br><br>**Orion Portfolio Services, LLC**<br>Serve: Nat'l Registered Agents, Inc. of MD<br>    351 West Camden Street<br>    Baltimore, MD 21201<br><br>    Defendant,<br><br>**Trident Asset Management, L.L.C.**<br>Serve: Corporation Trust Incorporated<br>    351 West Camden Street<br>    Baltimore, MD 21201<br><br>    Defendant. | Civil Action No. CAL16-36510 |

```
Case: CAL16-36510
NEW CASE/PRO SE
CV CLERK FEE-           88.00
AD LEGAL SERV           55.00
RIF - NEW CAS          30.00
TOTAL                 165.00
Rest PG15   Rcpt $ 48840
SJH    DEC    Blk $ 024
Sep 19, 2016        04:00 Pa
```

## CLASS ACTION COMPLAINT AND JURY DEMAND

The Plaintiff Jonathan T. Alston, individually and on behalf of all those similarly situated, states the following claims for relief against the defendants Orion Portfolio Services, LLC ("Orion") and Trident Asset Management, L.L.C. ("Trident") and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees pursuant to 15 U.S.C. §1692 et seq. (Fair Debt Collection Practices Act or "FDCPA"), 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act or "FCRA") and the common law tort of defamation.

1



## PARTIES

2.     The Plaintiff, Jonathan T. Alston, is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3.     Headquartered in Atlanta, Orion Portfolio Services is a privately held company that specializes in the purchase of distressed consumer receivables.

4.     Based in Atlanta, Georgia, Trident Asset Management, LLC specializes in the collection, management and servicing of non-performing consumer receivables.

## FACTS

5.     Mr. Alston obtained his Trans Union credit report and discovered a collection account being reported by Trident Asset Management.

5.     The Trident collection account indicated that Mr. Alston owed $1,391 to Verizon for utility services.

6.     Prior to finding the Trident collection account on his report, Mr. Alston had never heard of Trident, had not received any communications from Trident and was unaware of any connection of Trident to Verizon.

7.     Trident's reporting to Trans Union, albeit indirectly, was its initial and only communication to the Plaintiff prior to Plaintiff contacting Trident.

8.     Trident did not provide any of the required disclosures required under the FDCPA §1692g within five days of its initial communication to Mr. Alston.

9.     In a letter dated June 11, 2016 Mr. Alston disputed the Trident collection account with Trans Union. Specifically, Mr. Alston disputed the amount of the debt.

10.    On July 12, 2016 Trans Union issued its investigation results, which stated that Trident verified the collection with no changes to how it was being reported, including no notation that the collection account was disputed.

2

11.     On August 22, 2016 Mr. Alston contacted Trident by phone to dispute the debt.

12.     Trident's representative, Helen, said she would send Mr. Alston a letter providing a breakdown of how the $1,391 was calculated.

13.     Helen further noted that the letter would advise Mr. Alston of his right to request validation and/or verification of the debt.

14.     Helen also explained that Trident had not sent Alston a letter since acquiring the debt because Trident's policy is to contact debtors by phone, not by mail, and Trident did not have a phone number on file for the Plaintiff.

15.     Mr. Alston called Trident again on August 25, 2016 to obtain more information regarding the debt.

16.     A female representative of Trident advised Mr. Alston that Orion Portfolio Services purchased the debt from Verizon and that Trident was collecting on behalf of Orion.[1]

17.     During their conversation the representative informed Plaintiff that the debt had been considered disputed as of August 22, 2016.

18.     She further advised him that Trident reports information regarding the debt to the CRAs, such as Trans Union, on the 23rd of every month.

19.     Despite acknowledging that Trident was aware that the debt was disputed on August 22, 2016, Trident communicated information to Trans Union regarding the debt on August 23, 2016 without communicating that the debt was disputed.

20.     Upon information and belief Trident communicated information regarding the debt to other third parties after August 22, 2016 without communicating that the debt was disputed.

21.     On or about August 26, 2016 Mr. Alston received correspondence from Trident.

---

[1] Under the doctrine respondeat superior, Orion is liable for each and every alleged violation of Trident.

22.     Although the correspondence informed Mr. Alston of his rights to dispute the validity of the debt without 30 days receiving the notice, Trident requested Mr. Alston send a $1,390.81 payment to Trident's address.

23.     Trident's request for payment overshadowed Mr. Alston's right to dispute the validity of the debt within 30 days of receiving the notice.

24.     Trident's immediate request for payment inferred Mr. Alston did not have 30 days to request validation of the debt.

25.     By letter dated August 29, 2016 Mr. Alston sent another dispute letter to Trans Union wherein he again disputed the purported balance.

26.     Contemporaneously with the dispute letter to Trans Union, Mr. Alston sent a letter directly to Trident.

27.     In his letters Mr. Alston disputed that Trident or Orion acquired the account from Verizon and that $1,390.81 was owed on the account.

28.     Regarding the claimed amount due of $1,390.81, Mr. Alston disputed that he owed $742 for FIOS TV equipment and $648.81 for past due charges.

29.     Mr. Alston informed Trident and Trans Union that he returned the FIOS TV equipment and that the $742 charge is unfounded.

30.     He further requested that Trident and/or Trans Union investigate and verify whether $648.81 of unpaid charges were incurred on his account.

31.     Despite receiving Mr. Alston's Validation of Debt Request dated August 29, 2016, Trident continued its debt collection activity -- i.e. reporting the debt to Trans Union -- prior to providing Mr. Alston with validation of the debt.

4

32.     On September 12, 2016 Trans Union issued its investigation results, which stated that Trident verified the collection with no changes to how it was being reported, including no notation that the collection account was disputed.

## COUNT ONE: VIOLATIONS OF FDCPA
### (Individual Claim - 15 U.S.C. 1692e)

33.     Plaintiff incorporates paragraphs 1 through 32.

34.     Defendants Orion and Trident violated 15 U.S.C. §1692e(2)&(10) by attempting to collect a debt by falsely claiming Plaintiff owed a debt to Orion and Trident.

35.     Defendants Orion and Trident violated 15 U.S.C. §1692e(2) by falsely claiming Plaintiff owed $1,391 to Orion and Trident for his Verizon account.

36.     Defendants Orion and Trident violated 15 U.S.C. §1692e(8) by communicating information to a third party, including Trans Union, that was known to be false.

37.     Defendants Orion and Trident violated 15 U.S.C. §1692g(b) by failing to cease collection of the debt following Plaintiff's written dispute of the debt and prior to Defendant's validation of the debt.

38.     As a result of the conduct, actions and inactions of Defendants, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, fear, embarrassment, humiliation, frustration, anger, headaches, sleeplessness, severe emotional and mental distress.

39.     Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendant D&S liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

## COUNT TWO: VIOLATIONS OF FDCPA
### (Class Claim - 15 U.S.C. 1692g)

5

40.     Plaintiff incorporates paragraphs 1 through 39.

41.     Defendants Orion and Trident violated 15 U.S.C. §1692g(a) by failing to notify Plaintiff and the class of their rights to dispute the debt and failing to disclose certain statutorily required information regarding the debt in which they were entitled to receive under §1692g within five days of Defendants' initial communication, indirectly via Trans Union, with the Plaintiff and the class.

42.     Defendants Orion and Trident further violated 15 U.S.C. §1692g(a) by including language that demanded payment or *may* be perceived to demand payment during the Plaintiff's and the class 30-day time period to dispute the debt.

43.     As a result of Defendants' language appearing to demand immediate payment, the Plaintiff and class were confused or *could have* been confused as to whether they had 30-days to dispute the debt and/or request validation of the debt.

44.     15 U.S.C. §1692g(a) provides that

> **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –**
>
> **(1)  the amount of the debt;**
>
> **(2)  the name of the creditor to whom the debt is owed;**
>
> **(3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
>
> **(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

6

**(5)   a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

## Class Allegations

45.     Plaintiff bring this action for himself and on behalf of the following classes, pursuant to Maryland Rule 2-231(a)&(b)(3).

46.     The First Class consists of (a) all individuals (b) within one year of the filing of this action (c) that had a collection account reported by Trident to their Trans Union credit report and (d) who did not receive a *timely* communication from Trident notifying them of their rights to dispute the debt and request certain information about the debt.

47.     The Second Class consists of (a) all individuals (b) within one year of the filing of this action (c) that received a letter from Trident (d) disclosing the debtors' rights to dispute the debt within 30-days of receiving the letter (e) but also contained a statement that may be interpreted as demanding payment within the 30-day time period.

48.     The members of the class are so numerous that joinder of all is not practicable.

49.     On information and belief, there are at least 40 individuals within the class.

50.     There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common questions are:

### First Class

a.      Whether Trident reports debts to CRAs before directly communicating with debtors;

b.      Whether Trident provides required disclosures to debtors within five days of reporting debts to CRAs; and

c.      Whether such practice violates the FDCPA.

7

Second Class

a.   Whether Trident sent the debtors a dunning letter;

b.   Whether Trident's dunning letter disclosed the debtors' rights to dispute the debt and request verification of the debt within 30-days of receiving the letter;

c.   Whether Trident's dunning letter demanded payment within 30-days of receiving the letter;

d.   Whether Trident's dunning letter's demand for payment could have confused the least sophisticated debtor as to his or her rights to dispute the debt; and

e.   Whether such practice violates the FDCPA.

51.   Plaintiff's claim(s) is typical of the claims of the members of both classes. All are based on the same factual and legal theories.

52.   Plaintiff will fairly and adequately represent the members of both classes. Plaintiff will retain competent and experienced counsel.

53.   A class action is superior for the fair and efficient adjudication of this matter, in that:

a.   Individual actions are not economically feasible;

b.   Members of the classes are likely to be unaware of their rights; and

c.   Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

54.   Trident failed to provide Plaintiff and the First Class' members with the notifications, information and disclosures required by the FDCPA, 15 U.S.C. §1692g(a), within the required statutory time period.

55.   Trident failed to provide Plaintiff and the Second Class' members with clear and unambiguous notifications, information and disclosures required by the FDCPA, 15 U.S.C. §1692g(a), within the required statutory time period.

8

56.   Plaintiff and the members of both classes have suffered damages as a result of Trident's violation(s) of the FDCPA.

57.   Plaintiff and the members of both classes are entitled to statutory and actual damages as a result of Trident's violation(s) of the FDCPA.

### COUNT THREE: VIOLATION(S) OF FCRA

58.   Plaintiff incorporates paragraphs 1 through 32.

59.   In response to Plaintiff's disputes, Trident did not conduct a thorough, detailed and careful inquiry of Plaintiff's claims. Instead of conducting a reasonable investigation and properly responding to Plaintiff's disputes, Trident performed a quick, sloppy, and superficial response, which consisted of nothing more than merely verifying identification information and/or matching the information on the credit reports with the information that Trident had on its computer system or same information Trident previously reported to Trans Union.

60.   Because Plaintiff disputed that he did not keep the FIOS TV equipment and should not have been charged $742 for buying the FIOS TV equipment, Trident should have done more than just matched identification information.  A reasonable investigation should have included Trident contacting Verizon and/or Plaintiff to verify whether he returned the FIOS TV equipment.

61.   Because Plaintiff disputed that he did not have past due charges of $648.81, Trident should have done more than just matched identification information.  A reasonable investigation should have included Trident contacting Verizon to verify Plaintiff actually incurred unpaid charges amounting to $648.81.

62.   Had Trident performed its statutory obligations then it would have either contacted Verizon and/or Plaintiff during its investigation or reported back to Trans Union that it could not verify the information, i.e. balance, as accurate.

9

63.     Trident further compounded its violations by failing to even report to the Trans Union that the Plaintiff disputed the debt.

64.     Had Trident performed its statutory obligations, then Trident would have actually conducted a detail, careful review of the Plaintiff's dispute that was forwarded from Trans Union, and would have instructed Trans Union to delete the collection account because it could not verify the accuracy of the amount of the debt.

65.     Trident's procedure to simply data match information that it previously reported or data match the information that it has on its computer desktop with the information currently be reported to the CRA, instead of conducting a careful inquiry into the substance and merits of a consumers' dispute, is unreasonable and a willful violation of the FCRA.

66.     Trident's intentional decision to report a debt against the Plaintiff while knowing it did not verify the accuracy of the disputed amount, is a willful violation of the FCRA.

67.     Accordingly, Trident's failure to comply with the requirements of 15 U.S.C. 1681s(2)(b)(1)-(5) is willful within the meaning of 15 U.S.C. 1681n(a).

68.     Alternatively, Trident's failure to comply with the requirements of 15 U.S.C. 1681s-2(b) was negligent within the meaning of 15 U.S.C. 1681o(a).

69.     As a result Trident's foregoing violations of 15 U.S.C. 1681s-2(b), Plaintiff's suffered actual damages, including but not limited to: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, frustration, humiliation and other emotional and mental distress.

70.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Trident in an amount to be determined by the Court pursuant to 15 U.S.C. 1681n and 1681o.

10

### COUNT FOUR: DEFAMATION

71.    Plaintiff incorporates paragraphs 58 through 70.

72.    Defendant intentionally and maliciously made false statements publically about Plaintiff's credit history. Defendant made false statements to Trans Union with the knowledge that Trans Union would provide those false statements to creditors or potential creditors of Plaintiff.

73.    Defendant knows, or could have easily discovered, and therefore should have known, that Plaintiff did not owe $1,391. Despite having no documentation to verify Plaintiff owed the $1,391, Trident reported to Trans Union that Plaintiff had a collection account.[2] The statements were defamatory in tending to injure the Plaintiff's credit profile and credit reputation in the financial community, as it impugns him to be financially irresponsible when Plaintiff, in fact, did not owe the claimed amount.

74.    In its publications and/or reportings to Trans Union, Defendant Trident knowingly made the aforementioned false and defamatory statements about Plaintiff as a collection tactic to coerce Plaintiff into paying Trident the false debt.

75.    Defendant Trident published this false and defamatory statement to Trans Union, who reasonably understood and interpreted this publication to be defamatory.

76.    Defendant Trident knew Trans Union would publish this false and defamatory publication to other creditors and users or viewers of Plaintiff's credit report.

77.    Defendant Trident acted with knowledge of the falsity of the statements and with the intent to frustrate and break the will of the Plaintiff. Trident intended to harm the

---

[2] After receiving the dunning letter Mr. Alston contacted Trident to dispute the debt and the Trident representative admitted that it had little to no information on the debt and did not know whether Mr. Alston returned the FIOS TV equipment nor did it know whether Mr. Alston incurred $648.81 of unpaid charges.

11

Plaintiff's chances of obtaining credit when instructing Trans Union to report the erroneous and derogatory credit information about the Plaintiff.

78.    Defendant Trident's false statements were published without a privilege.

79.    As a result of the false and defamatory statements published by Defendant Trident, the character and financial reputation of the Plaintiff was harmed, his standing and reputation in the financial and credit community was impaired, and he suffered mental anguish as result.

80.    As a direct and proximate result of the false and defamatory credit reporting published by Defendant Trident, Plaintiff's credit score and credit profile was injured, thereby suffering a loss of prospective credit.

81.    The Plaintiff is entitled to recover compensatory damages from the Defendants for the foregoing violations.

82.    Trident's actual knowledge that its representations were false, coupled with its intent to harm, constitutes malice and therefore Defendants are liable for punitive damages.

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

## DEMAND FOR TRIAL BY JURY

83.    Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

JONATHAN T. ALSTON

Jonathan T. Alston, *Pro Se Plaintiff*
10012 Cedarhollow Lane
Largo, MD 20774
Tel: (301) 538-8095

12