IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JONATHAN ALSTON | * |
| Plaintiff, *pro se* | * |
| v. | * Civil No. **PJM 16-3697** |
| ORION PORTFOLIO SERVICES, LLC, *et al.* | * |
| Defendants. | * |

## MEMORANDUM OPINION

*Pro se* plaintiff Jonathan Alston has brought suit against Orion Portfolio Services, LLC ("Orion") and Trident Asset Management, LLC ("Trident") (hereinafter, collectively "Defendants"), in connection with a debt he purportedly owed to Verizon Communications ("Verizon") for unreturned television equipment and associated fees. Alston claims that Orion, which allegedly purchased the debt from Verizon, and Trident, which allegedly sought to collect the debt on behalf of Orion, attempted to collect the $1,390.81 debt to Verizon in violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*. He also brings a claim against Defendants under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* as well as a claim for common law defamation.[1] Alston seeks actual, compensatory, statutory, and punitive damages, as well as attorney's fees and costs and "any other relief deemed appropriate by this Court." First Amended Complaint ("FAC") 10, ECF No. 19.

Defendants have moved for partial summary judgment on Counts I and II and for full summary judgment on Counts III and IV. ECF No. 36. In response, Plaintiff filed a Cross-

---

[1] Although Alston contends that Trident's, and not Orion's, actions violated FCRA and constituted defamation, he asserts that "[u]nder the doctrine of respondeat superior, Orion is liable for each and every alleged violation of Trident." FAC ¶ 17, ECF No. 19.

Motion for Summary Judgment. ECF No. 46. For the reasons that follow, the Court will **GRANT** Defendants' Motion for Partial Summary Judgment, ECF No. 36, and **DENY** Plaintiff's Cross-Motion for Summary Judgment, ECF No. 46.

## I. FACTUAL BACKGROUND

Alston states in his Complaint that he obtained his Trans Union credit report and discovered a collection account being reported by Trident, which indicated that he owed $1,391 to Verizon for utility services. FAC ¶¶ 5-6. On June 11, 2016, Alston says he disputed the Trident collection account with Trans Union. *Id.* ¶ 10. On July 12, 2016, Trans Union allegedly issued its investigation results, stating that Trident had verified the collection with no changes to how it was being reported, including no notation that the collection amount was disputed. *Id.* ¶ 11.

On August 22, 2016, Alston purportedly contacted Trident by phone to dispute the debt. *Id.* ¶ 12. He was told that Trident would send him a letter providing a breakdown of how the $1,391 was calculated and advising him of his right to request validation and/or verification of the debt. *Id.* ¶¶ 13-14. Alston was further supposedly told that Trident had not sent him a letter since it acquired the Verizon debt because Trident's policy was to contact debtors by phone, not by mail, and Trident did not have Alston's phone number on file. *Id.* ¶ 15.

Alston says he called Trident again on August 25, 2016. *Id.* ¶ 16. He says he was advised that Orion had purchased the debt from Verizon and that Trident was collecting the debt on behalf of Orion. *Id.* ¶ 17. He was also purportedly told that the debt was considered "disputed" as of August 22, 2016 and that Trident reported information regarding the debt to credit reporting agencies (such as Trans Union) on the 23rd of every month. *Id.* ¶¶ 18-19.

On August 26, 2016, Alston received correspondence from Trident which informed him of his rights to dispute the validity of the debt within 30 days of receiving the notice, but the notice still requested that he send a $1,390.81 payment to Trident's address. *Id.* ¶¶ 22-23. Either during one of his alleged phone calls with Trident or in this letter, Alston was informed that the $1,390.81 debt stemmed from unreturned Verizon FIOS TV equipment ($742.00) and past due charges ($648.81). *See Id.* ¶ 29.

Alston says that on August 29, 2016, he sent a dispute letter to Trans Union, challenging the balance. *Id.* ¶ 26. He also sent a letter directly to Trident. *Id.* ¶ 27. The letters purportedly disputed that Trident or Orion acquired the account from Verizon, that $1,390.81 was owed on the account, or that Alston owed $742.00 for FIOS TV equipment and $648.81 for past due charges. *Id.* ¶¶ 28-29. Even so, says Alston, Trident continued its debt collection activity, reporting the debt to Trans Union prior to providing Alston with validation of the debt. *Id.* ¶ 32.

According to Alston, on September 12, 2016, Trans Union issued its investigation results, finding that Trident had again verified the collection, indicating that no changes would be made as to how the debt would be reported and containing no notation that the collection account was disputed. *Id.* ¶ 33

Alston thereafter filed the present Complaint in the Circuit Court for Prince George's County, ECF No. 2, where Defendants removed to this Court in timely fashion. ECF No. 1. On November 22, 2016, Defendants filed a Motion to Dismiss Counts I and II of the Complaint on the basis that Alston failed to state a claim upon which relief could be granted. ECF No. 9. The Court granted the Motion and dismissed the two Counts without prejudice, granting Alston leave to file an amended complaint. ECF No. 15.

In a lengthy footnote, the Court also directed Alston to file an affidavit establishing that the case was brought in good faith. ECF No. 15 at 1 n.1. The footnote observed that the case is one of a series of several suits brought by members of the Alston family, all allegedly residing at 10012 Cedarhollow Lane, Largo, MD 20774. *Id.* The footnote also noted that Plaintiff's brother, Thomas Alston, has been both a plaintiff in many of these suits as well as the de facto author of several of them, and is an individual who advertises legal services on LinkedIn despite not being a barred attorney. *Id.* Given the similarities between the present suit and many others brought in this and other courthouses by members of the Alston family, the Court directed Plaintiff in his affidavit to declare, among other things, whether he in fact resides at 10012 Cedarhollow Lane, Largo, MD 20774, what his other residences are, and whether Thomas Alston in any way assisted him in the filing of the present suit. The Court also directed Plaintiff to "set forth the names of every individual (including, but not limited to Thomas Alston) or entity that has provided him with any advice, documents, or pleadings in connection with the present lawsuit." *Id.*

On March 20, 2017, Alston filed an affidavit. In it, he disputes that the LinkedIn profile was written by his brother. Pl. Aff. ¶ 15, ECF No. 17-3. He also states that he talks "*generally* to [his] family including Thomas Alston about the law and in particular the federal statutes such as the Fair Credit Reporting Act and Federal Debt Collection Practices Act," but that they do not talk about "the specifics of a particular case", and that he primarily uses PACER and the National Consumer Law Center to assist him in drafting his pleadings. *Id.* ¶¶ 16-17, 19 (emphasis in original). He affirms that he has not kept "a mental record of whether [he] received any particular advice, documents or pleadings from Thomas Alston or any other person or source other than PACER or the National Consumer Law Center." *Id.* ¶ 20. Finally, Alston notes that he

-4-

has three addresses, including the 10012 Cedarhollow Lane, Largo, MD 20774 address, that he regularly uses. *Id.* ¶ 1-4. He states that he cannot affirm how he divides his time between the homes, but spends most of his time at a different residence. *Id.* ¶¶ 6-7.

In addition to filing his affidavit, Alston also filed an Amended Complaint, which is almost identical to the Original Complaint. ECF No. 19.

On October 30, 2017, Defendants filed a Partial Motion for Summary Judgment, asking the Court to grant them full summary judgment on Counts III and IV and to limit Plaintiff at most to statutory damages on Counts I and II. Defendants argue that Alston has failed to provide any evidence of damages beyond those provided by statute, and that he has failed to provide any evidence supporting his allegations under the FCRA and for defamation.

On November 27, 2017, Alston filed both an Opposition and a Cross-Motion for Partial Summary Judgment, arguing that there is sufficient evidence to find Defendants liable under the FDCPA and supporting his claims for damages. ECF No. 46. He states that he has attached a series of exhibits supplementing the evidentiary record on these issues, but no such attachments have been filed with the Court or apparently with defense counsel.

## II. STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "some alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original).

## III. ANALYSIS

## A. Counts I and II

The Court considers the claims alleging violations of the FDCPA first, for which Alston seeks, among other things, actual and compensatory damages consisting of a lost credit opportunity and emotional distress. Defendants argue that the Court should limit Alston's recovery on these claims to statutory damages only, because Alston has failed to provide evidence of damages beyond those provided by the FDCPA.

In support of their Motion, Defendants highlight Alston's failure to produce requested documentation, such as credit reports or medical bills, as well as his deposition responses, which were highly evasive. For example, when asked during his deposition about what actual damages he suffered as a result of the disputed debt, Alston responded that he was seeking to do something that required a credit check, but that he was denied credit when the disputed debt appeared on his credit report. J. Alston Dep. Tr. 28:19-29:14, ECF No. 36-2. When asked who denied him credit, Alston refused to answer. *Id.* at 30:21-31:1 ("It's not your business to know who I went to go try to buy something, use my credit with.").

In addition, Alston alleges in his FAC that the disputed debt "injured" his credit score and credit profile (FAC ¶ 70, ECF No. 19), but when asked whether he compared his credit scores from before and after the debt, he replied "No I didn't." (J. Alston Dep. Tr. 64:4-14, ECF No. 36-2). He also failed to produce copies of his credit reports from before and after the reporting of the disputed debt evidencing this injury. *Id.* at 63:13-21.

When asked about his emotional damages, Alston was similarly elusive. He testified that he suffered "embarrassment, humiliation" from his credit denial and that he discussed these feelings with "[b]asically anybody that will listen." *Id.* at 53:20; 55:18-22. However, when asked to provide names of these potential witnesses, Alston responded, "Well, I don't know the first

names, last names and all that. I can't really give you a whole bunch of names." *Id.* 57:7-17. When pressed, Alston provided the names of two friends and his wife as individuals who "know [he] got denied . . . [a]nd know how bad [he] felt about it." *Id.* 58:1-3.[2]

Finally, when questioned over why he was seeking attorney's fees despite appearing *pro se*, Alston admitted to "consulting" with an attorney. However, when asked who this attorney was, Alston repeatedly refused to answer, responding "I'd like to keep him out of the game" and "He's got nothing to do with this." *Id.* at 27:3-4, 27:18.[3]

Alston attempts to cure these deficiencies by arguing that newly produced evidence attached to his Opposition and Cross-Motion for Summary Judgment sufficiently rebuts his deposition lapses. However, as noted earlier, for some reason, neither the Court nor apparently Defendants received the evidence supposedly attached to the Opposition.

Even if Alston had attached the referenced documents to his Opposition, they may yet be subject to objection on the grounds that they should have been produced during discovery and are merely late-conceived attempts to cure Alston's unjustified evasiveness during his deposition. Furthermore, if Alston were to overcome such an objection, he would still bear the

---

[2] This answer is in contrast to Plaintiff's initial disclosures, which only lists himself, Orion, Trident, Trans Union, and Verizon as individuals "likely to have discoverable information." Pl.'s Initial Disclosures, ECF No. 36-4.

[3] The Court finds Plaintiff's refusal to respond to this line of questioning particularly troublesome in light of what Plaintiff says in his affidavit and the Court's prior admonition regarding the possible involvement of Thomas Alston in this case. Given Plaintiff's evasiveness in answering questions about his legal "consultations," Thomas Alston's apparent self-marketing of his legal services (despite the fact that he is not a licensed attorney), the prolific number of cases filed in this courthouse by members of the Alston family (all allegedly residing at the address 10012 Cedarhollow Lane, Largo, MD 207704), and the considerable similarities between pleadings in this case and other Alston cases (including a case recently filed with this Court by Plaintiff against Trident over the same disputed Verizon debt, PJM 18-088), the Court advises Plaintiff that his credibility will, in every respect, be in play before the jury.

Accordingly, even though as a matter of law Plaintiff cannot recover attorney's fees while he continues to proceed *pro se* (*Shlikas v. Sallie Mae, Inc.*, No. CIV. WDQ-06-2106, 2011 WL 5825660, at *1 (D. Md. Nov. 16, 2011)), his evasiveness regarding consulting with an attorney may well be admissible at trial.

burden of proving that such evidence is admissible, a questionable prospect as the record currently stands (for example, a mere declaration by Alston himself that an unnamed Quicken Loans representative advised him not to apply for a loan based on the Verizon debt would not pass muster).[4]

As for Alston's listing of 10012 Cedarhollow Lane, Largo, MD 20774 as his "address"—the same address listed by several Alston plaintiffs in their *pro se* lawsuits—Alston says he never claimed that the address was his "residence," but in fact it is "regularly used" by him (as are two other nearby addresses) and that he may "be communicated with" there. Pl. Aff. ¶¶ 1-12, ECF No. 17-3. Maryland Circuit Court Rule 1-301(b), which applied where Alston originally filed this suit, does, without further defining the term, require a plaintiff to list his "address" in his initial pleading. *See also* Fed. R. Civ. P. 4. The reason for the rule is obvious. A party being sued, as well as the Court, needs to know where to contact the plaintiff who is suing. If a plaintiff refuses to give any address or simply makes up an address, it clearly frustrates transparency in the legal process. Accordingly, the custom and practice in this state, of which the Court takes judicial notice, is that the "address" of the plaintiff in a civil suit means his "fixed address" or "permanent address" or "residence address," where the plaintiff spends most if not all of his non-working time. Indeed, for purposes of establishing diversity of citizenship—and this admittedly is not a diversity case—the plaintiff must give a true fixed address in order to determine that diversity in fact exists.

What gives pause in the present case is the number of *pro se* Alston plaintiffs who list 10012 Cedarhollow Lane as their "address," which at best appears to be little more than a maildrop. While this is not an occasion to consider sanctioning Alston regarding his use of that

---

[4] Should Alston attempt to file the referenced exhibits, Defendants will be given the option of deposing Alston again regarding the newly produced evidence, but the deposition will be at Alston's <u>expense</u>.

particular Cedarhollow home "address," it nevertheless fortifies the conclusion that Defendants should—if they so choose—be able to cross examine Alston about the bona fides of the "address" which he appears to share with so many Alstons; this insofar as it bears on Alston's credibility in general.

In sum, the Court finds that Alston has not produced sufficient evidence of actual damages or compensatory damages in support of his claim for emotional distress. *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 583 (D. Md. 2015) ("[A]n award of compensatory emotional distress damages requires evidence establishing that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated. That is, a plaintiff's own conclusory allegations that he felt 'embarrassed,' 'degraded,' or 'devastated,' and suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress.") (quotation and citation omitted). Defendants' Motion for Partial Summary Judgment on Counts I and II is **GRANTED WITH PREJUDICE**. Assuming the jury otherwise finds for Plaintiff on the matter of Defendants' liability, Plaintiff's recovery for these claims is limited at most to statutory damages.[5]

### B. Count III

Alston also alleges that Trident (and by extension, Orion) willfully and negligently violated the Fair Credit Reporting Act by failing to conduct a reasonable investigation after being notified of the debt dispute, as required by 15 U.S.C. § 1681s-2(b). Defendants argue that they are entitled to summary judgment on this claim because there is insufficient evidence that the investigation was unreasonable. The Court agrees.

---

[5] This ruling does not resolve whether Plaintiff has carried his burden of establishing liability under the FDCPA, and, as indicated, Alston's credibility, including the bona fides of his claims, may be explored at trial.

The FCRA creates a private right of action allowing injured consumers to recover actual damages caused by negligent violations and both actual and punitive damages for willful noncompliance. *See Robinson v. Equifax Info Servs.*, LLC, 560 F.3d 235, 239 (4th Cir.2009); *see also* 15 U.S.C. §§ 1681n, 1681o. Section 1681s–2(b) outlines the duties a debt collection agency has when given notice of a dispute concerning inaccurately reported information. *See* 15 U.S.C. § 1681s–2(b)(1). Under this Section, an agency is only required to investigate information it has provided if a credit reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information. 15 U.S.C. § 1681s–2(b)(1); *see also Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *6 (D. Md. Mar. 4, 2014). "Plaintiff bears the burden of showing the investigation was unreasonable." *Alston*, 2014 WL 859013, at *7.

Alston claims that Trident was notified multiple times, both by himself and Trans Union, that he was disputing the Verizon debt. He asserts that he sent at least three letters, two to Trans Union and one to Trident, and made at least two phone calls to Trident disputing the charges. Alston alleges that, despite being notified of the dispute, Trident performed "a quick, sloppy, and superficial response, which consisted of nothing more than merely verifying identification information and/or matching the information on the credit reports with the information that Trident had on its computer system . . . ." FAC ¶ 49, ECF No. 19. He also asserts that a reasonable investigation would have "included Trident contacting Verizon and/or Plaintiff to verify whether he returned the FIOS TV equipment." *Id.* ¶ 50.

Despite the specificity of these allegations, Alston has produced little to no discovery to support his contentions. He produced only one letter he sent to Trans Union or Trident (ECF No. 36-5), and none of the correspondence that was sent back to him. Nor can he testify as to the

contents of that correspondence. Pl.'s Dep. Tr. 49:14-50:14, ECF No. 36-2 ("What I'm saying is I can't tell you exactly what that correspondence was, I don't know if that was a validation of the debt. . . . I can't tell you what that was."). Finally, when asked what investigation Trident conducted and why it was unreasonable, he responded "I don't know what they did" and "I don't believe they talked to Verizon." *Id.* at 60:17, 61:1. Alston is bound by these answers.

Accordingly, he has advanced no evidence to show that Trident's investigation was unreasonable. The Court will **DISMISS WITH PREJUDICE** Count III.

### C. Count IV

Alston's final Count alleges common law defamation.

Under the FCRA, a plaintiff complaining of inaccurate credit reporting can only maintain a common law claim for defamation if the claim alleges information "furnished with malice or willful intent." *Beuster v. Equifax Information Services,* 435 F.Supp.2d 471, 479 (D.Md. 2006); *see also,* 15 U.S.C. § 1681h(e). Otherwise, a straight defamation claim is preempted by the FCRA. *Id.*

As stated above, while Alston has made certain <u>allegations</u> regarding Defendants' credit reporting activities, he has <u>offered no evidence at all</u> regarding Trident's investigation, including testimony as to the steps Trident took in conducting the investigation. Not only has Alston not shown straight defamation, a fortiori, he has not in any way shown that Trident acted with the malice or willful intent required to avoid preemption of the claim by the FCRA.

The Court will **DISMISS WITH PREJUDICE** Count IV.

## IV. CONCLUSION

Defendants' Partial Motion for Summary Judgment, ECF. No. 36, is **GRANTED WITH PREJUDICE**, Alston's Cross-Motion for Summary Judgment, ECF No. 46, is **DENIED WITH PREJUDICE**, and Counts III and IV are **DISMISSED WITH PREJUDICE**.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

April 11, 2018