IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JONATHAN T. ALSTON** | * | |
| | * | |
| Plaintiff, *pro se* | * | |
| | * | |
| v. | * | Civil No. **PJM 16-3697** |
| | * | |
| **ORION PORTFOLIO** | * | |
| **SERVICES, LLC,** *et al*. | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

*Pro se* plaintiff Jonathan Alston has sued Orion Portfolio Services, LLC ("Orion") and Trident Asset Management, LLC ("Trident") (hereinafter, collectively "Defendants") in connection with a debt he purportedly owed to Verizon Communications ("Verizon") for unreturned television equipment and associated fees. Alston claims that Orion, which he says purchased the debt from Verizon, and Trident, which he says sought to collect the debt on behalf of Orion, attempted to collect the $1,391 debt in violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*.

Defendants have moved for dismissal of the remaining counts in Alston's Amended Complaint, as well as for sanctions. ECF No. 67. Alston opposes the Motion and has filed a Motion to Reconsider the Court's Order (ECF No. 58) denying his earlier Motion to Reconsider. ECF No. 73. For the following reasons, the Court will **DENY** Plaintiff's Motion to Reconsider, ECF No. 73, and **GRANT** Defendants' Motion to Dismiss and Motion for Sanctions, ECF No. 67.

# I. FACTUAL BACKGROUND

The Court has recited the facts of this case in two prior Memorandum Opinions, ECF Nos. 15, 51, but believes they should be recounted again for context.

Alston states in his Amended Complaint that he obtained a credit report from Trans Union and discovered a collection account reported by Trident that indicated that he owed $1,391 to Verizon for utility services. Amended Complaint ("AC") ¶¶ 5-6, ECF No. 19. Alston says he disputed the Trident collection account with Trans Union in a letter dated June 11, 2016. *Id*. ¶ 10. On July 12, 2016, Trans Union allegedly issued its investigation results, advising Alston that Trident had verified the account and determined that no changes to the report were appropriate, indicating it found no notation that the amount was in dispute. *Id*. ¶ 11.

On August 22, 2016, Alston again purportedly contacted Trident, this time by phone, to dispute the debt. *Id*. ¶ 12. He says he was told that Trident would send him a letter providing a breakdown of how the $1,391 was calculated and advising him of his right to request validation and/or verification of the debt. *Id*. ¶¶ 13-14. Alston was further supposedly told that Trident had not sent him a letter after it acquired the Verizon debt because Trident's policy was to contact debtors by phone, not by mail, and Trident did not have a phone number for Alston on file. *Id*. ¶ 15.

Alston says he called Trident yet again on August 25, 2016. *Id*. ¶ 16. He says he was advised at that time that Orion had purchased the debt from Verizon and that Trident was collecting the debt on behalf of Orion. *Id*. ¶ 17. Alston also says he was told that the debt was considered "disputed" as of August 22, 2016 and that Trident had reported information regarding the debt to credit reporting agencies (such as Trans Union) on the 23rd of every month. *Id*. ¶¶ 18-19.

On August 26, 2016, Alston received correspondence from Trident, which informed him of his right to dispute the validity of the debt within 30 days of receiving the notice, but the notice still requested that he send a $1,390.81 payment to Trident's address. *Id.* ¶¶ 22-23. Either during one of his alleged phone calls with Trident or in this letter, Alston says he was informed that the $1,390.81 debt stemmed from unreturned Verizon FIOS TV equipment ($742.00) and from past due charges ($648.81). *See Id.* ¶ 29.

Alston goes on to say that on August 29, 2016, he sent a dispute letter to Trans Union, challenging the claim. *Id.* ¶ 26. He also says he sent a letter directly to Trident. *Id.* ¶ 27. The letters purportedly disputed the fact that Trident or Orion acquired the account from Verizon, or that $1,390.81 was owed on the account, or that Alston owed $742.00 for FIOS TV equipment and $648.81 for past due charges. *Id.* ¶¶ 28-29. Even so, says Alston, Trident continued its debt collection activity and reported the debt to Trans Union prior to providing Alston with validation of the debt. *Id.* ¶ 32.

According to Alston, on September 12, 2016, Trans Union issued its investigation results, finding once again that Trident had verified the amount of the debt, and indicating once again that no changes would be made as to how the debt would be reported, and indicating once again that it found no notation that the collection account was disputed. *Id.* ¶ 33

Alston thereafter filed a Complaint in the Circuit Court for Prince George's County, ECF No. 2, which Defendants removed to this Court in timely fashion. ECF No. 1. On November 22, 2016, Defendants filed a Motion to Dismiss Counts I and II of the Complaint on the grounds that Alston had failed to state a claim upon which relief could be granted. ECF No. 9. The Court granted Defendants' Motion and dismissed the two Counts, but did so without prejudice, granting Alston leave to file an amended complaint. ECF No. 15.

In a lengthy footnote, the Court also directed Alston to file an affidavit establishing that the case was brought in good faith. ECF No. 15 at 1 n.1. The footnote observed that the case was one of dozens of suits alleging violations of fair debt collection laws brought by members of the Alston family, all of whom claimed to reside at 10012 Cedarhollow Lane, Largo, MD 20774. *Id.* The footnote also noted that Plaintiff's brother, Thomas Alston, a non-attorney who also invokes the Cedarhollow Lane address, has been both a plaintiff in many of these lawsuits as well as the de facto author of several of them. *Id.* Thomas Alston advertises legal services on LinkedIn, including his claim of work on debt collection cases, despite not being an attorney barred in any jurisdiction. Given the similarities between the present suit and many others brought in this and other courthouses by members of the Alston family, the Court directed the current Plaintiff Jonathan Alston to declare, under oath, among other things, (a) whether he in fact resides at 10012 Cedarhollow Lane, Largo, MD 20774, (b) what his other residences are, and (c) whether Thomas Alston in any way assisted him in the preparation or filing of the present suit. The Court also directed Plaintiff to "set forth the names of every individual (including, but not limited to Thomas Alston) or entity that has provided him with any advice, documents, or pleadings in connection with the present lawsuit." *Id.*

On March 20, 2017, Alston filed an affidavit. In it, he disputes that the LinkedIn profile about Thomas Alston was written by Thomas Alston. Pl. Aff. ¶ 15, ECF No. 17-3. He also states that he talks "*generally* to [his] family including Thomas Alston about the law and in particular the federal statutes such as the Fair Credit Reporting Act ["FCRA"] and Federal Debt Collection Practices Act," but that they do not talk about "the specifics of a particular case," and that he primarily uses PACER and the National Consumer Law Center to assist him in drafting his pleadings. *Id.* ¶¶ 16-17, 19 (emphasis in original). Jonathan Alston affirmed that he has not kept

"a mental record of whether [he] received any particular advice, documents or pleadings from Thomas Alston or any other person or source other than PACER or the National Consumer Law Center." *Id.* ¶ 20. Finally, Jonathan Alston noted that he has three addresses, including the 10012 Cedarhollow Lane, Largo, MD 20774 address, that he regularly uses. *Id.* ¶ 1-4. He stated that he could not affirm how he divides his time between the homes but said that he spends most of his time at a different residence. *Id.* ¶¶ 6-7.

In addition to filing his affidavit, Alston also filed an Amended Complaint, which closely parallels the Original Complaint. ECF No. 19.

On October 30, 2017, Defendants filed a Partial Motion for Summary Judgment as to Counts III and IV of Alston's Amended Complaint, asking the Court to limit Alston at most to statutory damages on Counts I and II. Defendants argued that Alston had failed to provide any evidence of damages beyond the limited amounts provided by statute, and that he had failed to provide any evidence supporting his allegations under the FCRA or for defamation. On November 27, 2017, Alston filed both an Opposition and a Cross-Motion for Partial Summary Judgment, arguing that there was sufficient evidence to find Defendants liable under the FDCPA that also supports his claims for damages. ECF No. 46. Although Jonathan Alston claimed to attach a series of exhibits supplementing the evidentiary record as to these issues, it appears that he did not file any attachments with the Court nor apparently did he share them with defense counsel.

On April 12, 2018, the Court issued a Memorandum Opinion and Order granting Defendants' Partial Motion for Summary Judgment and denying Alston's Cross-Motion for Partial Summary Judgment. ECF Nos. 51, 52. The Court dismissed Counts III and IV of Alston's Amended Complaint, limiting his possible recovery on Counts I and II of the Amended Complaint to statutory damages only. *Id.* Subsequently, the parties agreed to hold a Pre-Trial Conference in

Court on August 30, 2018, ECF No. 55, which was later postponed until September 20, 2018.[1] ECF No. 57. Alston, however, did not participate in the preparation of the Pre-Trial Order filed by Defendants, as required by the Local Rules of Court, seeking instead leave to postpone the Pre-Trial Conference, ECF No. 60, which the Court denied. ECF No. 62.

On September 20, 2018, Jonathan Alston failed to attend the Pre-Trial Conference, but instead had his brother, Thomas Alston, the referenced non-attorney, appear on his behalf. Pre-Trial Conference Transcript ("PTC Tr.") 2:7–12, ECF No. 74. Despite Thomas Alston's non-attorney status, the Court was prepared to ask questions of him, but he began by refusing to answer questions under oath. PTC Tr. 3:15–21. Thomas Alston did, however, agree to answer the Court's questions to the extent he felt comfortable doing so. *Id.* The Court then questioned Thomas Alston extensively about the claims on his LinkedIn page, asking, for example, what he meant in saying he had "helped many borrowers stop their banks from foreclosing," had "helped borrowers sue their banks and get money," and could "give you everything you need to properly challenge your foreclosure." *Id.* at 16:22–17:4. Thomas Alston claimed that he intended to promote his services as a paralegal to potential attorneys who specialized in FDCPA and FCRA cases and blamed a freelance writer he said he hired to draft his LinkedIn page for any misrepresentations as to the nature of his services. *Id.* at 18:14–19:21.

The Court also asked Thomas Alston if he had assisted Jonathan Alston in any way in preparing any of the pleadings in the present case. *Id.* at 26:11–17. Thomas Alston responded that he "may have had a hand" in preparing the pleadings, saying he "normally . . . will give somebody a template [for drafting pleadings]." *Id.* at 26:18–19. Thomas Alston also claimed that he had discussed this and other cases with family members. *Id.* at 26:23–27:8. However, when defense

---

[1] In the interim, on September 10, 2018, the Court denied Alston's Motion to Enforce an alleged settlement agreement with Defendants. ECF No. 58.

counsel pointed out to Thomas Alston that Jonathan Alston, at his deposition in 2017, testified that he had not spoken about the facts of his case with Thomas Alston, and that Thomas Alston had not provided him with any pleading templates or forms, Thomas Alston responded that Jonathan Alston may in fact have used a template to prepare his pleadings in a prior case. *Id.* at 27:14–28:8. Thomas Alston then stated he was unsure if Jonathan Alston had used a template to prepare the pleadings for the present case. *Id.* at 28:6–8.

Based in part on Jonathan Alston's failure to assist in preparation of the Pre-Trial Order and his failure to appear at the Pre-Trial Conference, on September 26, 2018, Defendants filed a Motion to Dismiss Under Federal Rule of Civil Procedure 41(b) and a Motion for Sanctions. ECF No. 67. Alston filed his Opposition on October 30, 2018, after the Court granted him an extension of the time to file. ECF No. 76.[2] Defendants filed their Reply on November 8, 2018. ECF No. 77.

## II.     ANALYSIS

### A. Defendants' Motion to Dismiss and Motion for Sanctions

Defendants ask the Court to dismiss the case on the grounds that Alston has consistently failed to prosecute this case in good faith, as exemplified by his failure to participate in the preparation of a proposed Pre-Trial Order, his failure to appear at the Pre-Trial Conference on September 20, 2018, and his refusal to produce documents or answer questions at his deposition on September 25, 2017, among other derelictions. The Court finds Defendants' position to be well-taken.

If a plaintiff "fails to prosecute" a case or does not "comply with [the Federal Rules of Civil Procedure] or a court order," the court may dismiss the case at the request of a defendant,

---

[2] Additionally, on October 9, 2018, Alston filed a Motion to Reconsider the Court's earlier denial of an earlier Motion to Reconsider. ECF No. 73. Defendants did not respond to this Motion.

7

and, unless it states otherwise, the dismissal order "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). In deciding whether to grant a Rule 41(b) dismissal motion, the court considers "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of 'a drawn out history of deliberately proceeding in a dilatory fashion,' and (4) the existence of a sanction less drastic than dismissal." *Black Water Marine Explorer, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 714 Fed. App'x 296, 297 (4th Cir. 2018) (quoting *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982)). These four factors are not exhaustive, however, and "the propriety of a dismissal [pursuant to Rule 41(b)] depends on the particular circumstances of the case." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989).

Alston has clearly failed to prosecute his case in good faith. As a *pro se* litigant, he remains responsible for initiating and litigating this case; he cannot blame any delay in prosecuting it on any counsel acting on his behalf.[3] Defendants have sustained considerable prejudice by way of Alston's actions in this case and have most assuredly incurred significant legal expenses associated with defending the case over nearly three years. The Court has already either dismissed some of Alston's claims outright, or has granted summary judgment to Defendants on others, while severely limiting the damages available to Alston. It has been an extraordinarily long haul, and no other remedy appears to be available that would bring Mr. Alston to book.

But the factor weighing most heavily in favor of dismissal is Alston's unbroken history of dilatory tactics, dating from at least the beginning of the discovery period. After he failed to produce his Initial Disclosures by the deadline prescribed in the Court's Scheduling Order,

---

[3] Despite Thomas Alston's admissions during the Pre-Trial Conference that he may have discussed his case with Jonathan Alston and provided him as well with a template for drafting pleadings, the Court still considers Jonathan Alston a *pro se* litigant. No barred attorney has ever formally entered an appearance on behalf of Jonathan Alston.

8

Defendants were forced to move to compel their production at Alston's expense.[4] ECF Nos. 22–25. Further, Alston did not respond to Defendants' request for production of documents prior to his deposition on September 25, 2017. Instead, he brought just six documents with him to the deposition in response to Defendants' subpoena *duces tecum*: (1) his Initial Disclosures, (2) the Scheduling Order in the case, (3) his Affidavit (ECF No. 17-3) regarding the extent to which he had or had not received assistance in litigating the case, (4) a letter dated August 29, 2016 addressed to Defendant Trident, (5) a letter dated August 29, 2016 addressed to the credit reporting agency TransUnion, LLC, and (6) Alston's objections to the Order compelling him to produce his Initial Disclosures. Jonathan Alston Deposition Transcript, September 25, 2017 ("J. Alston Dep. Tr.") at 19:3–20, ECF No. 67-6. All of these documents, however, were either available on the docket or already in Defendants' possession.

Further, at his deposition, Alston consistently dodged defense counsel's questions. For example, he testified that he suffered "embarrassment [and] humiliation" after being denied credit on the basis of the allegedly illegitimate debt at issue in this case and claimed to have discussed these emotions with "[b]asically anybody that will listen." J. Alston Dep. Tr. at 53:20; 55:18–22. Overall, Alston said he told "probably a hundred people" about his purported emotional distress. *Id.* at 57:11. Yet, when defense counsel asked Alston to provide the names of any of these potential witnesses, Alston responded "Well, I don't know the first names, last names and all that. I can't really give you a whole bunch of names," and, when pressed by defense counsel, offered the names of only his wife, mother, and three friends. *Id.* at 57:18–58:12. More importantly, Alston refused to identify any specific instance where he was denied credit based on Defendants' purported

---

[4] Defendants note that a check they received as payment of these sanctions appears to have been remitted by "Thomas J. Alston," suggesting further Thomas Alston's involvement and assistance in the present case. *See* ECF No. 67-11 (photocopy of check for $200.00 remitted by "Thomas J. Alston").

9

wrongdoing that occasioned embarrassment and humiliation on his part, responding "It's not your business to know who I went to go try to buy something, use my credit with." *Id.* at 30:21–31:1.

Alston was equally cagey when he refused to answer questions about whether and how much legal assistance he had received in the case. Initially, he claimed that he had drafted his Complaint entirely by himself.[5] *Id.* at 25:19–21. But then he said that he in fact had consulted with "an attorney," *Id.* at 26:14–20, stating, however, that he would prefer to "keep [the attorney] out of the game" and that there was "no need to talk about him." *Id.* at 27:3–4. For the remainder of his deposition, Alston persisted in refusing to tell defense counsel the identity of the attorney with whom he had consulted. *See id.* at 27:19–28:4; 51:10–13; 74:10–12; 96:15–98:1.

Overall, Alston has displayed a pattern of total disregard for the basic requirements of good faith litigation. On the basis alone of his refusal to participate in the preparation of the required joint Pre-Trial Order and his failure to attend the required Pre-Trial Conference, such a cavalier attitude would convince the Court that dismissal of the case with prejudice is appropriate. *See, e.g.*, *Callahan v. Communication Graphics, Inc.*, 657 Fed. App'x 739, 744–45 (10th Cir. 2016) (affirming dismissal of *pro se* action pursuant to Rule 41(b), in part due to plaintiff's failure to appear at Pre-Trial Conference). But there is more. The fair debt collection laws unquestionably provide important protections for consumers in their everyday lives. But, in the present case, Jonathan Alston has floated claims of dubious veracity, has held back documents, and has given dodgy responses to critical inquiries when it has suited him to do so. Sad to say, this appears to be little more than a classic nuisance suit.

---

[5] Jonathan Alston asked, as to the Complaint he purportedly drafted himself, if the Complaint "is a class action or it's not?" J. Alston Dep. Tr. at 25:7–8. More concerning, Jonathan Alston *may have exposed himself to charges of perjury*, since his brother, Thomas Alston, claimed at the Pre-Trial Conference that he had given Jonathan Alston a template for drafting the pleadings in the case—contradicting Jonathan Alston's claim under oath that he drafted the Complaint by himself.

Defendants seek attorney's fees and costs, pursuant to the FDCPA. *See* 15 U.S.C. § 1692k(a)(3) ("On a finding by the court than an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."). The Court finds there is ample evidence indicating that Alston has litigated this case in bad faith, including his failure to prepare for the Pre-Trial Conference, his failure to appear at the Pre-Trial Conference, his resistance to producing documents in discovery, and his excessive evasiveness at his deposition. In view of that, the Court will award attorney's fees and related costs to Defendants.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and Motion for Sanctions.

Defendants are directed to file a more specific Motion for Fees and Costs within fourteen days hereof. Plaintiff may respond, and Defendants may reply in the ordinary course.

### B. Alston's Motion to Reconsider

Alston has filed a Motion to Reconsider (ECF No. 73), which is actually a Motion to Reconsider an earlier Order of the Court denying a prior Motion to Reconsider. In it, Alston argues that the Court improperly denied his earlier Motion to Reconsider (ECF No. 65) before he had a chance to file a reply brief to Defendants' response in opposition (ECF No. 66). Motions to reconsider are "extraordinary" and are "only to be invoked up on a showing of exceptional circumstances." *Johnson v. Montminy*, 289 F. Supp. 2d 705, 705 (D. Md. 2003) (quoting *Compton v. Alton Steamship Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979)) (internal quotation marks omitted). A motion to reconsider may be appropriate when:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or

significant change in the law or facts since the submission of the issue to the Court. *Such problems rarely arise and the motion to reconsider should be equally rare.*

*Solomon v. Dawson*, No. PWG-13-1953, 2013 WL 4747987, at *1 (D. Md. Sep. 13, 2013) (quoting *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)) (emphasis added). While Alston claims that his Motion to Reconsider is justified because the Court ruled on his prior Motion to Reconsider before he filed a reply, his original Motion to Reconsider asked the Court to review its Order denying a motion to enforce an alleged settlement agreement (ECF No. 58). Alston contended that the Court had incorrectly held that the parties had not reached a settlement agreement, arguing that, under principles of contract law, an agreement had in fact been formed. ECF No. 65 at 1–5. But the Court disagreed, finding no such settlement. At best, then, Alston's Motions to Reconsider, including the one presently before the Court, have been founded on alleged errors of legal reasoning (a proposition which the Court obviously rejects), which do not constitute "exceptional circumstances" sufficient to justify granting a motion to reconsider.

The Court will **DENY** Alston's Motion to Reconsider.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reconsider, ECF No. 73, is **DENIED**, and Defendants' Motion to Dismiss and Motion for Sanctions, ECF No. 67, is **GRANTED WITH PREJUDICE**.

Within fourteen (14) days, Defendants shall file a more particular Motion for Attorney's Fees and Costs. Plaintiff may file an Opposition, and Defendants a Reply in the ordinary course.

A separate Order will **ISSUE**.

**June 11, 2019**

                                                /s/
                                    **PETER J. MESSITTE**
                                **UNITED STATES DISTRICT JUDGE**